NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S25G1183
Byron Keith Walker
v.
The State

On Writ of Certiorari from the Court of Appeals of Georgia
No. A25A0287

Argued: March 18, 2026 — Decided: June 30, 2026

ELLINGTON, Justice.

After Byron Keith Walker was convicted of aggravated stalking under OCGA § 16-5-91, the trial court granted his motion in arrest of judgment on the ground that the indictment failed to allege all essential elements of that crime, and the Court of Appeals reversed. *State v. Walker*, 375 Ga. App. 288 (2025). Having granted a writ of certiorari, we hold that the statutory element of "place or places" where the offense occurred, including its definition in OCGA § 16-5-90(a)(1), is an essential element of aggravated stalking under OCGA § 16-5-91. Because the aggravated stalking count of the indictment recited neither the statutory language "place or places" nor its statutory definition and did not allege the facts necessary to establish this element, we reverse the judgment of the Court of Appeals.

In relevant part, OCGA § 16-5-91(a) provides that "[a] person commits the offense of aggravated stalking when," in violation of a temporary protective order, he "contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the

other person."[1] In the first sentence of the preceding code section, OCGA § 16-5-90(a)(1), which is part of the same article, the offense of stalking is similarly defined but does not require the violation of any order.[2] Subsequent sentences of OCGA § 16-5-

---

[1] In its entirety, OCGA § 16-5-91(a) reads as follows:

A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

[2] In its entirety, OCGA § 16-5-90(a)(1) reads as follows:

A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. For the purpose of this article, the terms "computer" and "computer network" shall have the same meanings as set out in Code Section 16-9-92; the term "contact" shall mean any communication including without being limited to communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device; and the place or places that contact by telephone, mail, broadcast, computer, computer network, or any other electronic device is deemed to occur shall be the place or places where such communication is received. For the purpose of this article, the term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which

2

90(a)(1) define various terms used in the definition of stalking. The sentence defining "place or places" provides that, "[f]or the purpose of this article, [OCGA §§ 16-5-90 through 16-5-96,] the term 'place or places' shall include any public or private property occupied by the victim *other than the residence of the defendant*." OCGA § 16-5-90(a)(1) (emphasis added).

At trial, Walker was convicted of both aggravated stalking, which allegedly occurred on June 29, 2021, and violating a family violence order, which allegedly occurred on June 23, 2021. In his timely motion in arrest of judgment, Walker argued that the aggravated stalking count of the indictment was substantively defective because it failed to allege that the "contact occurred at a place other than the residence of the defendant." That count charged Walker with aggravated stalking pursuant to OCGA § 16-5-91, in that he, "in violation of a temporary protective order[,] did unlawfully contact Brittany Walker at or about 3419 Pleasant View Court, Loganville, without the consent of said victim, for the purpose of harassing and intimidating said victim."

The trial court granted Walker's motion in arrest of judgment, concluding that the aggravated stalking count of the indictment "is substantively defective as it failed to allege all essential elements of the crime charged" because that count "does not contain the language 'other than the residence of the defendant' which is clearly an element of the offense and listed as such in the current pattern jury charge for aggravated stalking."

---

causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

On appeal, the Court of Appeals held that, as in *Kaufman v. State*, 344 Ga. App. 347, 353–54 (2018), which rejected a challenge to two stalking convictions asserting that neither charge alleged the place where the stalking occurred, the aggravated stalking charge against Walker sufficiently stated the offense in the terms and language of the statute. See *Walker*, 375 Ga. App. at 290. The Court of Appeals explained further that, in any event, because the definition of the crime charged does not include an exception within such definition, the statutory language "other than the residence of the defendant" presents a ground for defense and did not need to be either alleged in the indictment or disproved in the case in chief. See id.

A challenge such as Walker's "to the sufficiency of an indictment because it fails to set forth all of the essential elements of the charged crime is properly considered a general demurrer." *State v. Mondor*, 306 Ga. 338, 340 (2019) (quotation marks omitted). General demurrers are not required to be raised before trial and "can be made after trial by means of a motion in arrest of judgment." *Rivera v. State*, 317 Ga. 398, 406 (2023) (quotation marks omitted). A "motion in arrest of judgment challenges a defect that the accused might otherwise have challenged by a timely general demurrer. It will lie only when the indictment is void." *Subar v. State*, 309 Ga. 805, 808 n.4 (2020) (quotation marks omitted). If an indictment "fails to allege all the essential elements of the crime or crimes charged, ... it violates due process, is void, and cannot withstand a general demurrer." *White v. State*, 319 Ga. 367, 384 (2024) (quotation marks omitted).

"A general demurrer challenges the sufficiency of the substance of the indictment." Id. "The general demurrer must be granted if the indictment fails to either (1) recite the language of the statute that sets out all the elements of the offense charged or (2) allege the facts necessary to establish a violation of a criminal

4

statute." *State v. Phillips*, 323 Ga. 125, 128 (2025) (quotation marks omitted). See also OCGA § 17-7-54(a) ("Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct."); *State v. Wyatt*, 295 Ga. 257, 260 (2014) ("Thus, an indictment couched in the language of the statute alleged to have been violated is not subject to a general demurrer." (quotation marks omitted)). Framed another way, the general demurrer should be granted if "the defendant can admit each and every fact alleged in the indictment and still be innocent of any crime," but "if the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer." *Powell v. State*, 318 Ga. 875, 880 (2024). "[A] demurrer (whether general or special) must allege some flaw on the face of the indictment itself; a demurrer ordinarily cannot rely on extrinsic facts that are not alleged in the indictment" unless the parties stipulate to the facts. *State v. Williams*, 306 Ga. 50, 53 (2019).

1. We first address whether the phrase "at or about a place or places," including the definition of "place or places" in OCGA § 16-5-90(a)(1), is an essential element of aggravated stalking. In general, "[e]lements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Nordahl v. State*, 306 Ga. 15, 22 (2019) (quoting *Mathis v. United States*, 579 US 500, 504 (2016)). However, a "statutory exception" to a criminal offense is not an element of the crime if it amounts to an affirmative defense. See *Budhani v. State*, 306 Ga. 315, 321–23 (2019) ("[T]he State is not required to allege in the indictment applicable statutory exceptions to the crimes charged.").

In this case, the Court of Appeals held, in part, that the

5

definition of "place or places" excluding the defendant's residence was a matter of affirmative defense that did not need to be alleged or proved by the State because it was not included within the definition of aggravated stalking. On appeal before this Court, Walker argues—relying on *Herring v. State*, 114 Ga. 96 (1901), among other cases—that "place or places"—as defined by the statute to include property "other than the defendant's residence"—is an element of aggravated stalking, and not an affirmative defense. The State responds—relying on, among other cases, *Budhani* and *Kitchens v. State*, 116 Ga. 847 (1903) (cited in *Budhani*, 306 Ga. at 323)—that the statutory definition of "place or places" sets out an affirmative defense rather than defining an essential element of the offense.

This Court explained *Herring* and *Kitchens* in *Rumph v. State*, 119 Ga. 121, 123 (1903). In *Rumph*, we addressed the question of how to determine whether a statute's particular "exception" or exclusion of certain persons or circumstances from criminal liability is an essential element that the State must prove to prove a criminal offense. In doing so, we explained that "[t]he line is sometimes very closely marked between what exceptions need be proved and what need not," and then offered a handful of ways to mark that line. Id. We said that such an "exception" was an element the State had to prove if it "constitutes a part of the offense itself, and not merely an exception to a general offense previously defined." Id. An exception is part of the offense if the statute criminalizes an act "when committed by a particular class of persons, or when committed under particular circumstances." Id. When a statute "provides that the commission of an act by *any* person, or under *all* circumstances, shall constitute an offense, and then declares that the provisions of the act shall not apply to a particular class of persons, or to a specified set of circumstances," that kind of

6

exception is an affirmative defense, not an essential element. Id. (emphasis added). And we offered one way to tell which is which: the State must "negative" an exception if it is "stated in the enacting clause" of the offense, but not if it appears "in distinct clauses" of the statute. Id. We have explained in this context that an "enacting clause" is that "which defines and describes the offense." *Herring*, 114 Ga. at 101 (quotation marks omitted).

Under this rule, the phrase "at or about a place or places," including the phrase "place or places" as defined in OCGA § 16-5-90(a)(1), is an essential element of aggravated stalking. The phrase is stated in the first sentence of OCGA § 16-5-91(a), which defines and describes the offense, and is surrounded in that sentence by other phrases that indisputably set out other elements of the offense. By itself, however, the phrase "place or places" is without substance and is, indeed, meaningless: the ordinary meaning of that phrase, without its corresponding definition, would be satisfied automatically in every case because it would refer to *any* location without limitation, and a crime has to be committed somewhere. See, e.g., *Place*, Black's Law Dictionary (5th ed. 1979) (also recognizing that the "word is a very indefinite term"). Thus, the phrase "place or places" in OCGA § 16-5-91(a) cannot be accurately described apart from its definition in OCGA § 16-5-90(a)(1), and that definition must be read into the phrase "place or places." See, e.g., *Schmitt v. State*, 318 Ga. 835, 847 (2024) (recognizing that aggravated assault under OCGA § 16-5-21(a) (which provides that aggravated assault is committed when a person "assaults" and one of several statutory aggravators is present) "has two elements: (1) the commission of a simple assault," which is defined in the preceding section, OCGA § 16-5-20(a), "and (2) the presence of a statutory aggravator"); *Rodriguez v. State*, 284 Ga. 803, 805 (2009) (holding that the statute establishing the offense of participation in criminal street gang

7

activity, OCGA § 16-15-4(a), "must be read in conjunction with the definitions of 'criminal gang activity' and 'criminal street gang'" in the preceding section, OCGA § 16-15-3, and rejecting a construction of § 16-15-4(a) that would make the portion forbidding participation in criminal street gang activity "meaningless or redundant").

So read, the definition—"any public or private property occupied by the victim other than the residence of the defendant"—is very similar to other "exceptions" that we have held to be essential elements of an offense that the State must allege and prove. See, e.g., *Rumph*, 119 Ga. at 123 (holding that, in a prosecution based on a statute declaring it to be unlawful to "wilfully and wantonly fire off or discharge any loaded gun or pistol on a public highway, and within fifty yards of a public highway, except in defense of person or property, or on his own premises," it was necessary to allege and prove that the shooting was done neither "in defense of person or property" nor on the defendant's "own premises"); *Isom v. State*, 83 Ga. 378 (1889) (holding that, as explained in *Rumph*, 119 Ga. at 124, in a prosecution for violation of a statute prohibiting the "act of stabbing another, except in his own defense, or other circumstances of justification," the indictment should allege, and the State should prove, that the stabbing was not done by the accused in his own defense or in other circumstances of justification); *Newman v. State*, 63 Ga. 533 (1879) (holding that, in a prosecution based on a statute prohibiting any person from permitting his employee "to sell or furnish to any minor, spiritous, or intoxicating, or malt liquors of any kind, without first obtaining written authority from the parent or guardian of such minor," the indictment was subject to general demurrer where it negated authority from the mother only and did not aver that she "was the sole parent, or that the father was dead, or that there was no

8

guardian"); *Conyers v. State*, 50 Ga. 103 (1873) (holding that, as explained in *Rumph*, 119 Ga. at 123, in a prosecution for violation of a statute prohibiting the keeper of a billiard table from permitting "any minor to play or roll on the same, without the consent of the parent or guardian," the absence of such consent was a material element that had to be alleged and proved).

2. We now address whether the aggravated stalking count of the indictment alleged the essential element of "place or places" where the offense occurred, as defined in OCGA § 16-5-90(a)(1). The Court of Appeals held, in part, that the indictment sufficiently stated the offense of aggravated stalking in the terms and language of the statute. Yet the indictment here does not recite the statutory language "at or about a place or places." Nor does it recite the statutory definition of "place or places."[3] Thus, the motion in arrest of judgment was properly granted unless the indictment alleged the facts necessary to establish that element. See *Phillips*, 323 Ga. at 128.

The aggravated stalking count did not allege the facts necessary to establish the element of "place or places," which element includes its statutory definition. Although that count specified the address where the alleged nonconsensual contact occurred, it failed to allege that the address was not Walker's residence, a fact that was required to establish the element of "place or places" based on its statutory definition. Likewise, the specification that Walker's unlawful contact with the victim was "in violation of a temporary protective order" does not equate to

---

[3] We express no opinion as to whether an indictment reciting the statutory language "at or about a place or places" and the statutory definition of that element, without more, would be subject to a special demurrer. See *Moore v. White*, 320 Ga. 120, 125 (2024) ("A special demurrer challenges the sufficiency of the form of the indictment.").

an allegation that the place where the contact occurred was not Walker's residence. To conclude otherwise would require us to look beyond the face of the indictment—in violation of settled law regarding demurrers—for additional facts or legal principles that would allow us to determine, for instance, that the temporary protective order did not or could not require Walker to stay away from his own residence or that the order required Walker to stay away from his residence but meant that the location did not or could not legally remain Walker's residence. In other words, Walker could admit each and every fact alleged in the aggravated stalking count, including the stated address, and still be innocent of any crime because it is not clear on the face of that count that the address was not his residence.[4] See *Herring*, 114 Ga. at 98,

---

[4] The Court of Appeals's reliance on *Kaufman*, 344 Ga. App. at 353–54, is misplaced. In that case, a general demurrer was not viable where the defendant contended that the indictment did not set forth the place at which he allegedly contacted the victim. The Court of Appeals held that, to withstand a general demurrer, the indictment only needed to state the offense of stalking in the terms and language of the statute, and not necessarily verbatim, and that the defendant's specific contention was more in the nature of a special demurrer. Although the indictment apparently did not allege the element "at or about a place or places" or its statutory definition, that specific issue was neither raised nor actually decided in the *Kaufman* opinion because no place was alleged in the indictment. See *Seals v. State*, 311 Ga. 739, 745 (2021) ("Decisions of this Court and of the Court of Appeals do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quotation marks omitted)). Here, in contrast, the indictment did set forth the specific place at which Walker allegedly contacted the victim, and Walker has raised, and we have resolved, an alleged deficiency subject to a general demurrer: the indictment's omission of the element "place or places" and its statutory definition. We disapprove *Kaufman* to the extent that it can be understood as holding that an indictment

10

103–04 (holding that indictment for unlawful practice of dentistry was insufficient to charge any offense where it failed to allege that the accused did not come within the proviso, in the same section and sentence as the definition of the offense, excepting those who had the lawful right to practice dentistry at the time of passage of the act). Cf. *Budhani*, 306 Ga. at 320–21 (holding that, "by alleging that [a specified drug] is 'a Schedule I Controlled Substance,' the indictment necessarily alleges that Budhani possessed and sold a Schedule I controlled substance to which an exception to OCGA § 16-13-25 (12) did not apply"; and, moreover, that OCGA § 16-13-50 (a) expressly stated that the State did not have to "negate any exemption or exception in this article in any … indictment … under this article"); *Kitchens*, 116 Ga. at 849 (affirming an order overruling a demurrer because the first sentence of a statute criminalizing carrying a pistol to an election ground or precinct set out "a general complete offense applicable to all persons," while the second sentence excepting certain officials acting in the discharge of their official duties "simply limit[ed] the operation of the law as defined in the first sentence of the section; but that law is no less a complete law within itself than if the latter part of the section had been omitted altogether").

Accordingly, the Court of Appeals erred in reversing the trial court's grant of Walker's motion in arrest of judgment on the grounds that the aggravated stalking count of the indictment sufficiently stated the offense in the terms and language of the statute and that the language "other than the residence of the defendant" was a matter of defense and did not need to be negatived in the indictment. Because the aggravated stalking

---

for stalking that omits both the element "place or places" and its statutory definition, as well as the facts necessary to establish that element, is not subject to a general demurrer.

11

count failed to allege all the essential elements of that crime, it is void, and the trial court therefore properly granted Walker's timely motion in arrest of judgment. See *Hinkson v. State*, 310 Ga. 388, 397 (2020) ("[A] count of an indictment which is subject to a valid general demurrer is void, and we have explained that a general demurrer may be raised after jeopardy has attached and at any time during trial, as well as in the form of a motion in arrest of judgment after a verdict in the same term of court." (quotation marks omitted)).

Contrary to the dissenting opinion, we are not inclined to explore "a harmless-error analysis that focuses on whether the alleged defect in the indictment deprived the defendant of the notice needed to prepare for trial and whether it was prejudicial at trial." Dissenting opinion, p. 8. Neither the dissenting opinion nor the State has attempted to consider whether such a harmless-error analysis of a general demurrer raised post-trial is consistent with all of our relevant decisional law, what cases would need to be overruled, or how stare decisis would apply to those cases.[5] See

---

[5] The cases that the dissenting opinion fails to consider include those holding that an indictment that fails to allege all essential elements of a crime is void, see *White*, 319 Ga. at 384; *Mondor*, 306 Ga. at 341; *Jackson v. State*, 301 Ga. 137, 139–40 (2017); *Henderson v. Hames*, 287 Ga. 534, 538 (2010); and those holding that "the lack of notice of the charges or allegations goes to the *form* of the indictment, which is challenged by a special demurrer, rather than a general demurrer," *State v. Owens*, 312 Ga. 212, 221 (2021) (quotation marks omitted), *State v. Heath*, 308 Ga. 836, 839 (2020) ("For purposes of a general demurrer, however, it matters not that the defendant had notice of the charges."); id. (also holding that a claim of ineffective assistance of counsel for failure to raise a general demurrer after jeopardy attached did not fail for lack of prejudice because the State's argument "rest[ed] on the faulty premise that it does not matter if the indictment is invalid in substance so long as the defendant had sufficient notice of the charges").

Moreover, even assuming that notice to the defendant is relevant to a

12

*Strong v. State*, 323 Ga. 737, 747–48 (2026) (stating that the defendant did "not engage in the type of stare decisis analysis that overruling" certain cases "would require, and we decline to do so"); *Ragland v. State*, 929 SE2d 144, 150 (Ga. 2026) (holding that the State has the burden of showing that a constitutional error should be deemed harmless beyond a reasonable doubt); *Ammons v. State*, 315 Ga. 149, 162 n.9 (2022) (observing that "the dissent engage[d] in no stare decisis analysis with regard to whether this Court should discard [a] line of decisions").

Accordingly, the judgment of the Court of Appeals must be reversed. See *Marshall v. State*, 229 Ga. 841 (1972) (reversing denial of pleas of nolo contendere, which were "treated by this [C]ourt as motions in arrest of judgment," because the indictments omitted an essential ingredient of the offense and therefore were void).

*Judgment reversed. All the Justices concur, except LaGrua, J., who dissents.*

---

general demurrer, the dissenting opinion fails to consider our precedent setting forth another purpose for requiring that all essential elements be alleged in the indictment: "to ensure that the grand jury found probable cause to indict." *Jackson v. State*, 301 Ga. 137, 141 (2017) (quotation marks omitted) ("Nor would [an indictment omitting essential elements] establish what facts the grand jury considered when it determined probable cause existed to charge the accused with a crime. Unless every essential element of a crime is stated in an indictment, it is impossible to ensure that the grand jury found probable cause to indict. An indictment that alleges the accused violated a certain statute, without more, would simply state a legal conclusion regarding guilt, and not an allegation of facts from which the grand jury determined probable cause of guilt was shown. Likewise, it would not allege sufficient facts from which a trial jury could determine guilt if those facts are shown at trial. A valid indictment uses the language of the statute, including the essential elements of the offense, and is sufficiently definite to advise [the accused] of what he must be prepared to confront." (citations and punctuation omitted)).

13

LaGrua, Justice, dissenting.

While I concur in Division 1, I disagree with the reversal of Byron Walker's conviction for aggravated stalking based on the claim that the indictment failed to allege that the place at which he was accused of committing aggravated stalking was "not Walker's residence." Maj. Op. at 10. I do not believe our law requires the result the majority opinion reaches, and therefore, I respectfully dissent.

On April 8, 2021, Walker consented to the entry of a twelve-month temporary protective order ("TPO") that (1) ordered him "to leave … immediately" the "residence located at 3419 Pleasant View Ct., Loganville"; (2) awarded "sole and exclusive use and possession of the … residence located at 3419 Pleasant View Ct., Lawrenceville,"  to Walker's estranged wife, Brittany Walker ("the victim"), and (3) ordered the Gwinnett County Sheriff's office "to remove and evict [Walker] from this residence." The consent TPO also ordered Walker "to stay away from [the victim's] residence," and "to surrender to law enforcement all and any keys, garage door openers and other security devices to the … residence." According to Count 2 of the indictment, less than three months after consenting to the entry of this 12-month TPO, Walker, "in violation of a temporary protective order did unlawfully contact [the victim] at or about 3419 Pleasant View Court, Loganville, without the consent of said victim for the purpose of harassing and intimidating said victim."

Although Walker filed a general demurrer prior to trial, alleging that each count "fails to adequately charge this Defendant with any offense against the law of the State of Georgia" and "fails to sufficiently set out the charges alleged, or any violation of law,"

14

Walker did not seek a hearing or insist upon a ruling on his general demurrer claim that the indictment failed to charge "any offense" or to "sufficiently set out the charges … or any violation of law." Instead, he took his chances at trial, where he testified that, in June 2021, he still lived with his family at 3419 Pleasant View Court, Loganville ("the Loganville house"), and he had the victim's permission to be there. In instructing the jury on the elements of aggravated stalking, the trial court charged the jury that the State had to prove that Walker contacted the victim "somewhere other than the Defendant's residence." The jury found Walker guilty of aggravated stalking, indicating that, based on the evidence presented, the jury believed Walker had "unlawfully contact[ed] [the victim] at or about 3419 Pleasant View Court without the consent of said victim for the purpose of harassing and intimidating said victim."

After the jury rejected Walker's contention that the Loganville house was his residence, Walker, through new counsel, filed a motion in arrest of judgment, claiming, in part, that the aggravated stalking count of the indictment was insufficient because it failed to allege that he committed the offense at a place "other than the residence of the defendant." I disagree.

OCGA § 17-9-63 provides: "No motion in arrest of judgment shall be granted for any matter not affecting the real merits of the offense charged in the indictment or accusation." When a defendant files a general demurrer and claims that the indictment fails to charge a crime, we have said that the relevant question, is "whether the defendant can admit each and every fact alleged in the indictment and still be innocent of any crime."[6] *Powell v.*

---

[6] The Court of Appeals has long held that when a challenge to the legal sufficiency of an indictment is raised after conviction, the indictment must be

15

*State*, 318 Ga. 875, 880 (2024) (quoting *State v. Williams*, 306 Ga. 50, 52 (2019)).

It is clear to me that Count 2 sufficiently alleged all the elements of aggravating stalking, including that the criminal conduct occurred at a place other than the residence of the defendant even though it did not specifically state that 3419 Pleasant View Court was not Walker's residence. Here, Count 2 charged Walker with committing "the offense of Aggravated Stalking (OCGA § 15-5-91)" and tracked the language of OCGA § 16-5-91(a)[7], alleging that "on or about the 29th day of June, 2021, in violation of a 12-

---

construed strongly in favor to the State, with every presumption and inference in favor of the verdict. See, e.g., *Wiltfang v. State*, 925 SE2d 218, 224 (Ga. Ct. App. 2026) ("In attacking an indictment after the verdict, every presumption and inference is in favor of the verdict."); *Cordovano v. State*, 61 Ga. App. 590, 594 (1940) (holding that where the defendant did not demur to the indictment until after trial, "the pleading must be construed most strongly in favor of the pleader (the State)"). The more liberal standard applied by the Court of Appeals is consistent with the standard applied by many courts when a defendant challenges the legal sufficiency of the indictment after conviction. See Wayne R. LaFave et al., Criminal Procedure § 19.3(g) (4th ed., Nov. 2025 update). I would be in favor of adopting such a standard because otherwise we provide a strong incentive for defendants (1) stay silent before trial about the allegedly missing element in the indictment; (2) challenge the evidence at trial as to that element; and (3) then, when a properly charged jury nonetheless finds the defendant guilty, raise the challenge after trial in a motion in arrest of judgment or habeas corpus.

[7] OCGA § 16-5-91(a) provides, that "[a] person commits the offense of aggravated stalking when such person in violation of … a temporary protective order … contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." And "'place or places' shall include any public or private property occupied by the victim other than the residence of the defendant." OCGA § 16-5-90(a)(1).

month temporary protective order did unlawfully contact Brittany Walker at or about 3419 Pleasant View Court, Loganville, without the consent of said victim, for the purpose of harassing and intimidating said victim, contrary to the laws of said State…." Walker could not admit the allegations of the indictment—that he *unlawfully* contacted the victim, in violation of a *temporary protective order*, at a *specific* place, without the victim's consent for the purpose of harassing and intimidating her—and still be innocent of any crime. It defies common sense that the legislature intended to define aggravated stalking in such a way that an individual can blatantly ignore the direct order of a trial court—in this case, a TPO directing that the individual be evicted and stay away from a residence—and not be convicted of aggravated stalking because the indictment did not allege that the residence he was evicted from was "not his residence." This is what today's majority opinion decides.[8] After today's decision, prosecutors who are charging a defendant with aggravated stalking must be careful to always allege in that count that the defendant's criminal behavior took place at a location— whether that be the coffee shop in the mall, the victim's place of business, or the place a TPO forbid him from visiting—that was "not the residence of the defendant."

Additionally, this case illustrates why I believe we ought to consider whether we should join other courts in determining that any flaw in the indictment was harmless, and I would welcome any arguments on that issue in a future case. Although we have

---

[8] If the General Assembly is concerned about the implications of this case, it could also delete the phrase "place or places" from OCGA § 16-5-91(a), such that the crime of aggravated stalking is committed when the defendant, in violation of a temporary protective order, or similar order, contacts another person without the consent of the other person for the purpose of harassing and intimidating the other person.

not considered the question of whether a harmless-error analysis may apply when reviewing the grant of a motion in arrest of judgment, we have explained that the requirement that an indictment allege all the essential elements of a crime is a longstanding principle with a constitutional foundation rooted in the guaranty of due process. See, e.g., *State v. Mondor*, 306 Ga. 338, 341 (2019) ("To the extent that an indictment fails to allege all the essential elements of the crime or crimes charged … it violates due process … and cannot withstand a general demurrer."); *Budhani v. State*, 306 Ga. 315, 319 (2019) (explaining that the requirement that the allegations of an indictment be legally sufficient is "founded upon the constitutional guaranty of due process ... which requires that the indictment on which a defendant is convicted contain all the essential elements of the crime or allege the facts necessary to establish a violation of a criminal statute so that the accused is put on notice of the crimes with which he is charged and against which he must defend" (cleaned up)). And applying a harmless-error analysis in this context would be consistent with cases in which we have applied a harmless error analysis to other claims of due process violations. See, e.g., *Moore v. State*, 315 Ga. 263, 271 (2022) (applying a harmless-error analysis to an assumed due process violation by the trial court).

Applying a harmless-error analysis would also be consistent with how courts in other jurisdictions address such claims when raised post trial. See generally Wayne R. LaFave et al., Criminal Procedure § 19.3(b) (4th ed., Nov. 2025 update) (discussing consequences of a failure to allege the essential elements of a crime and citing case law from federal and state courts that have applied a harmless-error analysis when a claim alleging the indictment failed to allege all the essential elements of a crime is raised post-trial). And given the due process concerns underlying the principle requiring an indictment to set out all the essential

18

elements of the charged crime, I would be inclined to apply a harmless-error analysis that focuses on whether the alleged defect in the indictment deprived the defendant of the notice needed to prepare for trial and whether it was prejudicial at trial. See generally Wayne R. LaFave et al., Criminal Procedure § 19.3(b) (4th ed., Nov. 2025 update) (citing cases). See also *State v. Lodermeier*, 481 NW2d 614, 618–19 (S.D. 1992) (on direct appeal from conviction, addressing a claim that the indictment failed to charge an essential element of crime, holding that defect may be cured "if the information sets forth the proper statute, the jury instructions set forth all the essential elements of the offense, and the State proves all the essential elements at trial" (quotation marks omitted)).

Here, it is not difficult to conclude that any purported deficiency in the indictment would be harmless. As noted above, the evidence reflects that Walker was prepared to challenge the "not-his-residence" element of aggravated stalking and in fact did so, by testifying at trial that he lived at the Loganville house. Additionally, Walker has made no argument that the purported flaw in the indictment hindered his preparation for trial. And importantly, the evidence presented at trial that Walker stalked the victim at a location other than his own residence was overwhelming: (1) the consent 12-month TPO was admitted into evidence and demonstrated, as a legal and practical matter, that the Loganville house at 3419 Pleasant View Court was not Walker's residence anymore given that the TPO directed the sheriff to "evict" Walker from the Loganville house and gave "sole and exclusive possession" of the Loganville house to the victim;[9] (2) the victim

---

[9] The State also introduced into evidence the three-year permanent family violence protective order that was entered in April 2022 and that continued the restrictions imposed in the TPO.

19

testified that in June 2021, the Loganville house was her residence and that Walker was not living there; and (3) Walker's and the victim's teenage son also testified that he was present at the Loganville house when police "came out and told [his] dad that he had to go" and that Walker had not been staying at the Loganville house since then. And finally, the jury was properly charged on the State's burden to prove that Walker committed the charged offense at a location other than his residence. Under these circumstances, I would conclude that any flaw in the sufficiency of the indictment was harmless.

Because I believe that the indictment sufficiently charged Walker with aggravated stalking, I dissent to Division 2 and to the reversal of Walker's conviction for aggravated stalking.